*PRELIMINARY PRINT*

VOLUME 598 U. S. PART 1

PAGES 288–305

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

APRIL 19, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.   Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## MOAC MALL HOLDINGS LLC *v.* TRANSFORM HOLDCO LLC ET AL.

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE SECOND CIRCUIT

No. 21–1270.   Argued December 5, 2022—Decided April 19, 2023

The question presented—whether 11 U. S. C. § 363(m) of the Bankruptcy
Code is jurisdictional—arises in the context of the Chapter 11 bank-
ruptcy of Sears, Roebuck and Co.   Sears sold most of its pre-
bankruptcy assets to respondent Transform Holdco LLC, including the
right to designate to whom a lease between Sears and petitioner MOAC
Mall Holdings LLC should be assigned.   MOAC leases space to tenants
at the Minnesota Mall of America.   The agreement with Transform re-
quired Sears to assign the lease to any assignee duly designated by
Transform.   When Transform later designated the Mall of America
lease for assignment to its wholly owned subsidiary, MOAC filed an ob-
jection with the Bankruptcy Court, arguing that Sears had not shown
"adequate assurance of future performance by the assignee" as the Code
requires, § 365(f )(2)(B).   The Bankruptcy Court disagreed with MOAC's
adequate-assurance argument and issued an order authorizing the lease
assignment (Assignment Order).   The Code contemplates that inter-
ested parties like MOAC may appeal such an order, but the effect of a
successful appeal is limited by § 363(m), which states that "[t]he reversal
or modification on appeal of an authorization under [§ 363(b) or § 363(c)]
of a sale or lease of property does not affect the validity of a sale or
lease under such authorization to an entity that purchased or leased
such property in good faith . . . unless such authorization and such sale
or lease were stayed pending appeal."   Fearing the implications of
§ 363(m) on an appeal, MOAC sought to stay the Assignment Order.
The Bankruptcy Court denied the stay, reasoning that an appeal of the
Assignment Order did not qualify as an appeal of an authorization de-
scribed in § 363(m), and emphasizing Transform's explicit representation
that it would not invoke § 363(m) against MOAC's appeal.   After the
Assignment Order became effective, Sears assigned the lease to Trans-
form's designee, and MOAC appealed the Assignment Order.   The Dis-
trict Court sided with MOAC on the adequate-assurance issue.   Trans-
form filed for rehearing, arguing that § 363(m) deprived the District
Court of jurisdiction.   The District Court determined that Second Cir-
cuit precedent bound it to treat § 363(m) as jurisdictional and dismissed
the appeal.   The Second Circuit affirmed.

Syllabus

*Held*: Section 363(m) is not a jurisdictional provision.  Pp. 295–305.

  (a) This case is not moot.  Transform argues that this case is moot because MOAC's ultimate relief hinges on the Bankruptcy Court's ability to reconstitute the Mall of America lease as property of the estate, and no legal vehicle remains available for undoing the lease transfer under the Code or otherwise.  A case remains live "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation," and it "'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'"  *Chafin* v. *Chafin*, 568 U. S. 165, 172.  As in *Chafin*, MOAC simply seeks "typical appellate relief," *id.*, at 173, and it cannot be said that the parties have "no 'concrete interest,'" *id.*, at 176, in whether MOAC obtains that relief.  Transform's response—which MOAC vigorously disputes—is that any ultimate vacatur of the Assignment Order will not matter irrespective of the Court's answer to the question presented.  This kind of argument is foreclosed by *Chafin*.  This Court declines to act as a court of "first view" to determine if Transform is correct that no relief remains legally available.  *Zivotofsky* v. *Clinton*, 566 U. S. 189, 201.  Pp. 295–296.

  (b) Section 363(m) is not a jurisdictional provision under this Court's clear-statement precedents.  Pp. 297–305.

    (1) Congressional statutes are replete with "preconditions to relief," *Fort Bend County* v. *Davis*, 587 U. S. ——, ——, such as filing deadlines, see *United States* v. *Kwai Fun Wong*, 575 U. S. 402, 410, and exhaustion requirements, see *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 157–158, 166, and n. 6.  Congress can, if it chooses, make compliance with such rules "important and mandatory," *Henderson* v. *Shinseki*, 562 U. S. 428, 435, but that does not, in itself, make such rules jurisdictional.  Because the "jurisdictional" label is consequential and has sometimes been loosely used by this Court, the Court has endeavored "to bring some discipline" to this area.  *Ibid.*  This Court has clarified that the jurisdictional label bears on "the power of the court, rather than [on] the rights or obligations of the parties."  *Reed Elsevier*, 559 U. S., at 161.  The Court will only treat a provision as jurisdictional if Congress "'clearly states'" as much.  *Boechler* v. *Commissioner*, 596 U. S. ——, ——.  This clear-statement rule does not require Congress to use "'magic words,'" but Congress's statement must be clear and not merely "plausible" or "better" than nonjurisdictional alternatives.  *Id.*, at ——.  Pp. 297–298.

    (2) The Court identifies nothing in §363(m)'s limits that purports to "gover[n] a court's adjudicatory capacity."  *Henderson*, 562 U. S., at 435.  The text does not address a court's authority or refer to the jurisdiction of district courts.  Instead, the provision takes as a given the exercise of judicial power over any "authorization under subsection (b)"

and explicitly contemplates that appellate courts might "revers[e] or modif[y]" *any* covered authorization, even though a reversal or modification of a covered authorization may not "affect the validity of a sale or lease under such authorization" to a good-faith purchaser or lessee under certain prescribed circumstances. This is not the stuff of which clear statements are made. Rather, this Court has treated similar statutory caveats as "significan[t] evidence of nonjurisdictional status." *Reed Elsevier*, 559 U. S., at 165. Given § 363(m)'s clear expectation that courts will exercise jurisdiction over any covered authorization, its text can be read as merely cloaking certain good-faith purchasers or lessees with a targeted protection of their newly acquired property interest, applicable even when an appellate court properly exercises jurisdiction. See *Scarborough* v. *Principi*, 541 U. S. 401, 414. Section 363(m) reads like a "statutory limitation," *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 516, that is tied in some instances to the need for a party to take "certain procedural steps at certain specified times," *Henderson*, 562 U. S., at 435.

Statutory context further clinches the case. Section 363(m) is separated from the Code provisions that recognize federal courts' jurisdiction over bankruptcy matters, 28 U. S. C. §§ 1334(a)–(b), (e). And unlike other Code provisions, see § 305(c), § 363(m) contains no "clear tie" to the Code's plainly jurisdictional provisions, *Boechler*, 596 U. S., at ——. That § 363(m) issues directions does not suffice to make it jurisdictional, as the Court routinely holds statutory commands nonjurisdictional notwithstanding emphatic directives. Pp. 299–301.

(3) Transform's creative arguments do not excavate a clear statement from § 363(m)'s unassuming text. First, appealing to supposed traditional principles of *in rem* jurisdiction, Transform insists that § 363(m) is jurisdictional because it reflects those principles. This follows, Transform says, because § 363(m) operates to ensure that (absent a stay) courts cannot disturb a transfer to a good-faith purchaser, thereby confirming that the court lacks a basis to exercise *in rem* jurisdiction over it. Setting aside MOAC's credible retort to this argument, Transform's contentions merely offer *a* reason to think Congress intended § 363(m) to be jurisdictional. That, without more, does not show a clear jurisdictional statement. See *Boechler*, 596 U. S., at ——. Second, Transform maintains that former Federal Rule of Bankruptcy Procedure 805 was understood to be jurisdictional because some appellate courts relied upon it to dismiss appeals that challenged the validity of a sale, without a consideration of the merits. Transform says that Congress transplanted Rule 805 wholesale into § 363(m). But this argument fails at the gate: Every lower court case Transform cites for support predates § 363(m)'s 1978 enactment, and thus long predates the

Opinion of the Court

Court's modern efforts on jurisdictional nomenclature. The Court routinely rejects such arguments, and does so here. Pp. 301–305.

*Vacated and remanded.*

JACKSON, J., delivered the opinion for a unanimous Court.

*Douglas Hallward-Driemeier* argued the cause for petitioner. With him on the briefs were *Gregg M. Galardi, Andrew G. Devore, Daniel G. Egan, Gregory S. Otsuka,* and *Thomas J. Flynn.*

*Colleen E. Roh Sinzdak* argued the cause for the United States as *amicus curiae* urging reversal. With her on the brief were *Solicitor General Prelogar, Principal Deputy Assistant Attorney General Boynton, Deputy Solicitor General Gannon,* and *Mark B. Stern.*

*G. Eric Brunstad, Jr.,* argued the cause for respondents. With him on the brief were *David A. Herman, Amy R. Wolf, Michael H. Cassel, R. Craig Martin,* and *Ilana H. Eisenstein.**

JUSTICE JACKSON delivered the opinion of the Court.

Under conditions prescribed by Congress, the Bankruptcy Code permits a debtor (or a trustee) to sell or lease the bankruptcy estate's property outside of the ordinary course of the bankrupt entity's business. 11 U. S. C. § 363(b). Interested parties may file an objection to such a sale or lease, and may appeal if the court authorizes a sale or lease of the estate's property over their objection. But § 363(m) restricts the effect of such an appeal, if successful.

Specifically, § 363(m) states that

> "[t]he reversal or modification on appeal of an authorization under [§ 363(b) or § 363(c)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased

―――――――

*\**David R. Kuney* filed a brief for the Hon. Judith Fitzgerald et al. as *amici curiae* urging reversal.

such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

Accordingly, sometimes, a successful appeal of a judicial authorization to sell or lease estate property will not impugn the validity of a sale or lease made under that authorization.

In this case, we are called upon to decide whether § 363(m)'s strictures are jurisdictional. If so, a party may invoke that provision at any time—without fear of waiver, forfeiture, or similar doctrines interposing. If not, courts can apply such doctrines when evaluating § 363(m) issues, where appropriate. For the reasons explained below, we conclude that § 363(m) is not a jurisdictional provision.

I

This saga began in 2018, when Sears, Roebuck and Co. (Sears) filed for Chapter 11 bankruptcy. That filing created a bankruptcy estate that included (with exceptions not relevant here) "interests of the debtor in property." § 541(a)(1). Such an estate is sometimes administered by a bankruptcy trustee; other times the debtor itself administers it as the "debtor in possession." §§ 1101, 1107; see *Mission Product Holdings, Inc.* v. *Tempnology, LLC*, 587 U. S. ——, —— (2019). Sears self-administered, and as a debtor in possession, Sears had statutorily qualified powers to dispose of the estate's property. §§ 1101, 1107, 363.

Early in 2019, Sears exercised one of those powers: its right to "use, sell, or lease, other than in the ordinary course of business, property of the estate." § 363(b)(1). Sears agreed to sell most of its assets to respondent Transform Holdco LLC (Transform), after which the Bankruptcy Court issued an order (Sale Order) approving the agreement.

Among the assets conveyed in that sale was the right for Transform to "designate to whom a lease between Sears . . . and some landlord should be assigned." *In re Sears Hold-*

*ings Corp.*, 616 B. R. 615, 619 (SDNY 2020) (*Sears II*).   The
agreement did not actually designate any assignees; it sim-
ply meant that, if Transform duly designated an assignee,
Sears had to assign the lease to the designee.   One of the
leases eligible for such assignment was Sears's lease with
petitioner MOAC Mall Holdings LLC, which leases spaces to
tenants at the Minnesota Mall of America.

Notably, and as relevant here, § 365 of the Code prohibits
assignment of an unexpired lease to anyone without "ade-
quate assurance of future performance by the assignee,"
§ 365(f)(2)(B), and further establishes special adequate-
assurance criteria related to "shopping center[s]," § 365(b)(3),
a term the parties agree describes the Mall of America.   In
that context, adequate assurance includes assurances that (1)
the proposed assignee has a "similar . . . financial condition
and operating performance" as the debtor "as of the time
the debtor became the lessee under the lease," and (2) the
assignment will not "disrupt any tenant mix or balance in
[the] shopping center."   §§ 365(b)(3)(A), (D).

Later in 2019, Transform designated the Mall of America
lease for assignment to its wholly owned subsidiary,[1] and
MOAC objected on the ground that Sears had failed to pro-
vide the requisite adequate assurance of future performance
by Transform.   The Bankruptcy Court disagreed and ap-
proved the assignment to Transform, in a decision that, like
the lower courts, we will call the "Assignment Order."

Here is where § 363(m) entered the picture.   MOAC
feared that, if it appealed the Assignment Order, Transform
might argue that § 363(m)'s restrictions limited or barred the
appeal.[2]   Looking to § 363(m)'s safe harbor for certain orders
that are "stayed pending appeal," MOAC sought to forestall
any such argument by asking for a stay of the Assignment

---

[1] This corporate distinction is immaterial for present purposes, so we
refer collectively to Transform and its subsidiary as "Transform."

[2] Whether this fear was justified under a proper interpretation of
§ 363(m) is a question we need not, and so do not, decide today.

Order. The Bankruptcy Court denied MOAC's request for a stay. The court reasoned that an appeal of the Assignment Order did not qualify as an appeal of an authorization described in §363(m), and it emphasized that Transform had explicitly represented that it would not invoke §363(m) against MOAC's appeal. Because no stay was granted, the Assignment Order became effective, and Sears duly assigned the lease to Transform.

MOAC then appealed the Assignment Order to the District Court, which initially sided with MOAC and concluded that Transform did not satisfy the pertinent §365 adequate-assurance provisions. It thus vacated the Assignment Order (as relevant) "to the extent it approved" Sears's assignment of the lease to Transform. *In re Sears Holdings Corp.*, 613 B. R. 51, 79 (SDNY 2020) (*Sears I*). Transform sought rehearing and—notably—backed away from its previous disclaimers, arguing for the first time that §363(m) deprived the District Court of jurisdiction to grant MOAC's requested relief. The District Court was "appalled" by Transform's gambit of waiting to invoke §363(m) until after losing the merits of the appeal, but determined that Second Circuit precedent bound it to treat §363(m) as jurisdictional, and thus not subject to "waiver [or] judicial estoppel." *Sears II*, 616 B. R., at 624–625. The District Court held that §363(m) was applicable and required it to dismiss the appeal, so it did so, leaving the Assignment Order unscathed. The Second Circuit affirmed, agreeing with the District Court's characterization of §363(m) as jurisdictional, based on Second Circuit precedent.

We granted MOAC's petition for certiorari to resolve the Circuit split that the Second Circuit's ruling reinforced. 597 U. S. —— (2022).[3] Before this Court, Transform not only de-

---

[3] Compare, *e. g.*, *In re Stanford*, 17 F. 4th 116, 122 (CA11 2021) (§363(m) is not jurisdictional), and *In re Energy Future Holdings Corp.*, 949 F. 3d 806, 820 (CA3 2020) (same), with *In re WestPoint Stevens, Inc.*, 600 F. 3d 231, 248 (CA2 2010) (§363(m) is jurisdictional).

fends the Second Circuit's characterization of § 363(m) as jurisdictional, but also urges us to dismiss this case on mootness grounds because the lease has already been transferred out of the estate via the assignment. Brief for Respondent 19–24.

## II

We first address Transform's mootness claim. A "case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin* v. *Chafin*, 568 U. S. 165, 172 (2013) (internal quotation marks omitted). The case remains live " '[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation.' " *Ibid.*

Stripped of its baubles, Transform's mootness argument is that MOAC's ultimate relief hinges on the Bankruptcy Court's ability to "reconstitut[e the leasehold] as property of the estate." Brief for Respondent 19. Transform asserts that such reconstitution is impossible unless the leasehold transfer is "avoid[ed]" under 11 U. S. C. § 549, which permits a debtor in possession to void certain transfers of estate property made after the bankruptcy case commences. But, according to Transform, only Sears can use § 549. And, per Transform, not only did Sears waive any such avoidance claims in the Sale Order, but the time for using § 549 has now expired. The upshot for Transform's mootness argument is that no legal vehicle remains available for undoing the lease transfer, and therefore MOAC cannot possibly obtain any effectual relief, irrespective of our answer to the question presented.

Our cases disfavor these kinds of mootness arguments. In *Chafin*, for example, a mother invoking the Hague Convention on the Civil Aspects of International Child Abduction sought, and received, an order from a Federal District Court that her child be returned to Scotland from the United States, where the child was residing with her father. 568 U. S., at 168–171. The father appealed, seeking reversal and

296 MOAC MALL HOLDINGS LLC *v.* TRANSFORM HOLDCO LLC

Opinion of the Court

a concomitant "'re-return'" order, *id.*, at 171, 173, but in the interim the mother had removed the child to Scotland, so the appellate court dismissed the father's appeal as moot. *Id.*, at 171. Before us, the mother defended the mootness holding on the grounds that the District Court on remand would lack the authority to "issue a re-return order either under the Convention or pursuant to its inherent equitable powers." *Id.*, at 174. We disagreed. We said her argument went "to the meaning of the Convention and the legal availability of a certain kind of relief," and thus "confuse[d] mootness with the merits." *Ibid.* And, at least where the father's contrary re-return argument was not "so implausible that it [was] insufficient to preserve jurisdiction," his "prospects of success [were] therefore not pertinent to the mootness inquiry." *Ibid.* (citing *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 89 (1998)).

So too here. Like the father in *Chafin*, MOAC simply seeks "typical appellate relief: that the Court of Appeals reverse the District Court and that the District Court undo what it has done." 568 U. S., at 173. And we cannot say that the parties have "no 'concrete interest,'" *id.*, at 176, in whether MOAC obtains that relief. Transform's only retort—which MOAC vigorously disputes—is simply that any ultimate vacatur of the Assignment Order will not matter. *Chafin* forecloses this kind of argument. Here, as elsewhere, we decline to act as a court of "'first view,'" plumbing the Code's complex depths in "'the first instance'" to assure ourselves that Transform is correct about its contention that no relief remains legally available. *Zivotofsky* v. *Clinton*, 566 U. S. 189, 201 (2012).[4]

---

[4] MOAC, naturally, disputes Transform's contentions. And MOAC's arguments about legally available forms of relief are not "so implausible that [they are] insufficient to preserve jurisdiction." *Chafin*, 568 U. S., at 174 (citing *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 89 (1998)). We need not take a definitive position on the correct resolution of Transform's elaborate mootness argument to be confident that MOAC's

Opinion of the Court

### III

With respect to the question that we granted certiorari to consider—whether §363(m) is a jurisdictional provision—our answer is no, for the reasons that follow.

### A

Congressional statutes are replete with directions to litigants that serve as "preconditions to relief." *Fort Bend County* v. *Davis*, 587 U. S. ——, —— (2019). Filing deadlines are classic examples. *United States* v. *Kwai Fun Wong*, 575 U. S. 402, 410 (2015). So are preconditions to suit, like exhaustion requirements. *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 157–158, 166, and n. 6 (2010). So, too, are "statutory limitation[s] on coverage," or "on a statute's scope," such as the "element[s] of a plaintiff's claim for relief." *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 515–516 (2006). Congress can, if it chooses, make compliance with such rules "important and mandatory." *Henderson* v. *Shinseki*, 562 U. S. 428, 435 (2011). But knowing that much does not, in itself, make such rules jurisdictional. *Ibid.*

The "jurisdictional" label is significant because it carries with it unique and sometimes severe consequences. An unmet jurisdictional precondition deprives courts of power to hear the case, thus requiring immediate dismissal. *Hamer* v. *Neighborhood Housing Servs. of Chicago*, 583 U. S. 17, —— – —— (2017). And jurisdictional rules are impervious to excuses like waiver or forfeiture. *Boechler* v. *Commissioner*, 596 U. S. ——, —— (2022). Courts must also raise and enforce them *sua sponte*. *Fort Bend County*, 587 U. S., at ——.

This case exemplifies why the distinction between nonjurisdictional and jurisdictional preconditions matters. In

———

disagreement is not frivolous. *Id.*, at 89 (explaining that an argument is implausible, in the relevant sense, when it is "'wholly insubstantial and frivolous . . . so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit'").

light of Transform's belated invocation of § 363(m), the District Court stated that, "if ever there were an appropriate situation for the application of judicial estoppel, this would be it." *Sears II*, 616 B. R., at 627. But not even such egregious conduct by a litigant could permit the application of judicial estoppel as against a jurisdictional rule.

In view of these consequences and our past sometimes-loose use of the word "jurisdiction," we have endeavored "to bring some discipline" to this area. *Henderson*, 562 U. S., at 435. We have clarified that jurisdictional rules pertain to "'"the power of the court rather than to the rights or obligations of the parties."'" *Reed Elsevier*, 559 U. S., at 161. And we only treat a provision as jurisdictional if Congress "'clearly states'" as much. *Boechler*, 596 U. S., at ——.

This clear-statement rule implements "Congress' likely intent" regarding whether *non*compliance with a precondition "governs a court's adjudicatory capacity." *Henderson*, 562 U. S., at 435–436. We have reasoned that Congress ordinarily enacts preconditions to facilitate the fair and orderly disposition of litigation and would not heedlessly give those same rules an unusual character that threatens to upend that orderly progress. *Wilkins* v. *United States*, 598 U. S. ——, —— – —— (2023); *Hamer*, 583 U. S., at —— (jurisdictional character is an exception "to the ordinary operation of our adversarial system"); *Fort Bend County*, 587 U. S., at —— (noting the sometimes "'[h]arsh'" consequences of enforcement of jurisdictional rules, including waste of judicial resources and unfairness to the litigants).

That said, Congress need not use "'magic words'" to convey its intent that a statutory precondition be treated as jurisdictional. *Boechler*, 596 U. S., at ——. "'[T]raditional tools of statutory construction'" can reveal a clear statement. *Ibid.* But the statement must indeed be clear; it is insufficient that a jurisdictional reading is "plausible," or even "better," than nonjurisdictional alternatives. *Id.*, at ——.

B

We see nothing in §363(m)'s limits that purports to "gover[n] a court's adjudicatory capacity." *Henderson*, 562 U. S., at 435.

Start with the text. Far from addressing "'a court's authority,'" or "'refer[ring] in any way to the jurisdiction of the district courts,'" *Fort Bend County*, 587 U. S., at ⸺, §363(m) takes as a given the exercise of judicial power over any authorization under §363(b) or §363(c) (hereinafter called "covered authorizations"). Indeed, §363(m) plainly contemplates that appellate courts might "revers[e] or modif[y]" *any* covered authorization, with a proviso: Sometimes, the court's exercise of power may not accomplish all the appellant wishes, because the reversal or modification of a covered authorization may not "affect the validity of a sale or lease under such authorization" to a good-faith purchaser or lessee under certain prescribed circumstances. §363(m). Thus, the provision consists of a caveated constraint on the effect of a reversal or modification. And the caveat is itself caveated; §363(m)'s constraints are simply inapplicable where the sale or lease was made to a bad-faith purchaser or lessee, or if the sale or lease is stayed pending appeal, or (for that matter) if the court does something other than "revers[e]" or "modif[y]" the authorization. *Ibid.*

This is not the stuff of which clear statements are made. Indeed, we treated similar statutory traits as "significan[t]" evidence of *non*jurisdictional status in *Reed Elsevier*, 559 U. S., at 165. In *Reed Elsevier*, this Court considered a Copyright Act provision that, "with certain exceptions," required copyright-infringement plaintiffs to show, as a condition to suit, that the work at issue had been registered. *Id.*, at 157–158. We found that the provision was nonjurisdictional, and thought it key that the provision expressly envisioned courts adjudicating some claims even absent registration, *id.*, at 165, since it would have been "at least unusual

to ascribe jurisdictional significance to a condition subject to these sorts of exceptions," *ibid.*

Similarly, given § 363(m)'s clear expectation that courts will exercise jurisdiction over a covered authorization, it is surely permissible to read its text as merely cloaking certain good-faith purchasers or lessees with a targeted protection of their newly acquired property interest, applicable even when an appellate court properly exercises jurisdiction. See *Scarborough* v. *Principi*, 541 U. S. 401, 414 (2004) (statutory provision was not jurisdictional, for it did not speak to the "'classes of cases'" the court was "competent to adjudicate" but to "proceedings auxiliary to cases already within that court's adjudicatory authority"). In other words, § 363(m) reads like a "statutory limitation," *Arbaugh*, 546 U. S., at 516, that is tied in some instances to the need for a party to take "certain procedural steps at certain specified times" (here, seeking a stay), *Henderson*, 562 U. S., at 435. And we certainly cannot say that § 363(m)'s "jurisdictional nature" is "clear *ex visceribus verborum*," as we once did of a statutory provision directing that "'[n]o court shall have jurisdiction over [a covered] action,'" *Rockwell Int'l Corp.* v. *United States*, 549 U. S. 457, 467–468 (2007).

Statutory context further clinches the case. Congress separated § 363(m) from the Code provisions that recognize federal courts' jurisdiction over bankruptcy matters. See 28 U. S. C. §§ 1334(a)–(b), (e), 157, 158; see also *Arbaugh*, 546 U. S., at 515 (emphasizing separation as evidence of nonjurisdictional status).[5] And § 363(m) does not contain any "clear tie" to the Code's plainly jurisdictional provisions. *Boechler*, 596 U. S., at ——. Nor does the Code lack for examples of such ties: Consider 11 U. S. C. § 305(c), which directs that certain judicial orders are "not reviewable by ap-

---

[5] Section 1334 grants bankruptcy jurisdiction to the district courts in the first instance, and those courts may "refe[r]" such jurisdiction to bankruptcy courts under prescribed circumstances. *Wellness Int'l Network, Ltd.* v. *Sharif*, 575 U. S. 665, 670–671 (2015).

peal or otherwise by the court of appeals" under § 158(d) (the Code provision that recognizes the courts of appeals' jurisdiction in bankruptcy matters).[6]

It also does not suffice that § 363(m) issues directions, as Transform occasionally intimates. We routinely hold that congressional commands are nonjurisdictional despite emphatic directives.[7] Transform seems to ignore the possibility that § 363(m)'s particular "statutory limitation[s]," *Arbaugh*, 546 U. S., at 516, could be "important" directives and yet *not* jurisdictional, *Henderson*, 562 U. S., at 435. But it is hardly clear to us that § 363(m)'s commands do anything more than that.

C

Transform offers two creative retorts, neither of which excavates a clear statement from § 363(m)'s unassuming text.

1

Transform insists that § 363(b) sales of estate assets must proceed under a court's *in rem* jurisdiction, and that courts can only exercise *in rem* jurisdiction with respect to a res (including interests like the leasehold here) over which they have actual or constructive control. Brief for Respondent 2, 39–40, 42. Appealing to "traditional principles of *in rem* jurisdiction," Transform reasons that the transfer of a res to

---

[6] To be clear, we do not hold here that 11 U. S. C. § 305(c) is jurisdictional. The point is only that, as jurisdictional cross-references go, § 363(m) is not the Code's clearest case.

[7] See, *e. g.*, *Musacchio* v. *United States*, 577 U. S. 237, 246 (2016) (a federal criminal statute commanding that "'no person shall be prosecuted, tried, or punished for any offense'" unless the charging document is filed within five years of the offense); *United States* v. *Kwai Fun Wong*, 575 U. S. 402, 416–417, 420 (2015) (multiple provisions stating that a claim "'shall be forever barred'"); *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 157–158 (2010) (the Copyright Act's mandate that "'no civil action . . . shall be instituted until preregistration or registration of the copyright claim has been made'"); see also *Fort Bend County* v. *Davis*, 587 U. S. ___, ___ ___ (2019) (collecting further cases).

a good-faith purchaser removes it from the bankruptcy estate, and so from the court's *in rem* jurisdiction over the estate. *Id.*, at 24, 39–40. And it thus concludes that § 363(m) is jurisdictional, because it operates to ensure that (absent a stay) courts cannot disturb a transfer to a good-faith purchaser, thereby "confirm[ing]" the traditional *in rem* truth that "the bankruptcy court cannot reach the *res*, and thus has no basis for the exercise of *in rem* jurisdiction over it." *Id.*, at 39–40.

This argument teeters on a contorted framing of contested general background principles rather than § 363(m)'s text and context (which, as we have said, lack any clear jurisdictional hue). Moreover, even setting aside MOAC's credible retort that traditional *in rem* jurisdiction did *not* necessarily cease when the res left a court's custody, Reply Brief 6–9, Transform's contentions about § 363(m)'s relationship to traditional *in rem* jurisdiction merely offer *a* reason to think Congress intended § 363(m) to be jurisdictional. That, without more, is not enough. See *Boechler*, 596 U. S., at ——. Transform does not (because it cannot) deny the paucity of textual or contextual clues indicating a clear statement of jurisdictional intent. See Part III–B, *supra*. And whatever else one might say about Transform's clear-statement case, it certainly has not shown that § 363(m)'s supposed alignment with allegedly pre-existing jurisdictional truths is so powerful that it nullifies these otherwise compelling nonjurisdictional inferences.

Section 363(m)'s operation further derails this bankshot argument. Transform's assertion is that § 363(m) is jurisdictional because it "confirms" a traditional truth that bankruptcy courts exercising *in rem* jurisdiction cannot touch a res that is transferred out of the estate. Brief for Respondent 39. But that sits uncomfortably with § 363(m)'s express contemplation that courts *can* touch—and affect the validity of—certain sales or leases (*e. g.*, those made to bad-faith purchasers) due to reversals or modifications of covered au-

thorizations even though the property concerned has left the
estate. Consequently, even if §363(m) mirrors traditional
*in rem* jurisdiction, it does not seem to reflect what Trans-
form wishes to see.

What is more, to the extent that a lower court can act with
respect to the res at all, surely it can only do so while exer-
cising congressionally conferred jurisdiction. *Celotex Corp.*
v. *Edwards*, 514 U. S. 300, 307 (1995). Applied here, that
principle puts Transform on the horns of a dilemma. If a
court, consistent with §363(m), issues a judgment affecting a
consummated sale's validity that draws on any *in rem* juris-
diction the Code confers in §1334, that conferral authorizes
the exercise of *in rem* power with respect to a res that has
left the estate. Section 363(m) could hardly "confirm" a sup-
posed traditional truth that its concept of jurisdiction re-
jects. But if that hypothetical judgment draws on a *non-
in rem* source of jurisdiction, then §363(m)'s power source is
even further disconnected from Transform's contested claims
about traditional *in rem* jurisdiction.[8] Either way, §363(m)
tells a jurisdictional tale inconsistent with the one Trans-
form needs.

In the end, then, Transform's claims about traditional
*in rem* jurisdiction are red herrings. Section 363(m) is what
matters, and Congress has not clearly stated that the provi-
sion is a limit on judicial power, rather than a mere restric-
tion on the effects of a valid exercise of that power when a
party successfully appeals a covered authorization.

2

Transform's second major salvo fares no better. It points
to former Federal Rule of Bankruptcy Procedure 805, which

_____

[8] This alternative is not fanciful; bankruptcy-court jurisdiction is not
purely *in rem*. *Central Va. Community College* v. *Katz*, 546 U. S. 356,
362, 369–372, 378 (2006); *Celotex Corp.* v. *Edwards*, 514 U. S. 300, 308
(1995) (discussing §1334's "'comprehensive'" jurisdictional grants).

was promulgated in 1976,[9] and characterizes that Rule as "'declaratory of'" a historic practice in which some appellate courts dismissed appeals "challenging the validity of a consummated sale . . . without considering the merits," which Transform equates with jurisdictional treatment. Brief for Respondent 43–44. Transform vigorously maintains that Congress fully transplanted Rule 805 into § 363(m), and that § 363(m) therefore imbibed the jurisdictional character that Rule 805 incorporated from the historic practice.

This argument relies on a supposed pre-1976 lower court jurisdictional consensus that Rule 805 formalized and Congress then built into § 363(m). But Transform trips over the first hurdle: Rule 805's supposedly jurisdictional character. We rejected this sort of use of old lower court cases in *Boechler*, because "almost all" of those lower court cases "predate[d] this Court's effort to 'bring some discipline' to the use of the term 'jurisdictional.'" 596 U. S., at —– — —. The facts here are even worse for Transform: *Every* case it cites to prove that Rule 805 was jurisdictional predates § 363(m)'s initial 1978 enactment, and thus long predates our modern efforts on jurisdictional nomenclature. If numerous recent lower court opinions (some as recent as 2005) treating the provision at issue as jurisdictional were not enough in *Reed Elsevier*, 559 U. S., at 160, n. 2, 169, Transform's weaker proffer will not do.

\*     \*     \*

Nothing in Transform's creative arguments in this case persuades us that § 363(m) is jurisdictional under our clearstatement precedents. Because the Second Circuit's judg-

---

[9] The Rule provided: "Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pendency of the appeal." Fed. Rule Bkrtcy. Proc. 805 (1976).

Opinion of the Court

ment rested on the mistaken belief that §363(m) is jurisdictional, we vacate that judgment and remand the case for further proceedings consistent with this opinion.[10]

*It is so ordered.*

Page Proof Pending Publication

---

[10] The parties contest other questions bearing on §363(m)'s meaning and scope. Compare Brief for Respondent 33–37, with Brief for United States as *Amicus Curiae* 28–32, and Reply Brief 21–24. Because we need not answer those questions to resolve the question presented, we do not.

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None